UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | |
|---|---|
| AMANDA SHELTON & CODY SHELTON | PLAINTIFFS |
| v. | NO. 5:22-CV-173-BJB |
| WESTERN KENTUCKY CORRECTIONAL COMPLEX, ET AL. | DEFENDANTS |

\* \* \* \* \*

### MEMORANDUM OPINION & ORDER

Amanda Shelton alleges she suffered every prison employee's worst nightmare: a male inmate she was treating for mental-health issues attacked her inside her office at the Western Kentucky Correctional Complex. In a prior opinion (DN 21), the Court dismissed Shelton's official-capacity claims against the Western Kentucky Correctional Complex, several guards, their supervisors, and the Director of the Department of Corrections. This order addresses the pending motion by the supervisory defendants to dismiss the individual-capacity claims and the motion to intervene filed by Shelton's workers' compensation insurer, Sequoia Insurance Company. Although Shelton's claims against several guards remain, the law compels dismissal of the claims against their supervisors and intervention by Sequoia.

**A. Motion to dismiss.** The core of Shelton's complaint is that unnamed guards—presumably the remaining defendants discussed below—escorted Jaime Forrester to Shelton's office and left the inmate there "without restraints and/or supervision." Complaint ¶¶ 16–17. Forrester then "physically attacked" Shelton. ¶ 18. The pending motion to dismiss, however, addresses the role of four other defendants—all supervisors who (according to the complaint) weren't directly involved in the incident: Cookie Crews (the Commissioner of the Department of Corrections), Bobbi Jo Butts (the warden of WKCC), Chris Hatton (a deputy warden), and John Tangerose (also a deputy warden). These four have filed a motion to dismiss the individual-capacity claims against them. DN 14. Those claims allege that they all exhibited "deliberate indifference" to Shelton's "liberty, safety, health and welfare" "in violation of … the Fifth and Ninth Amendments"; acted negligently "by failing to protect [Shelton] from physical assault while on the WKCC premises"; and are liable for her husband's loss of consortium. ¶¶ 1, 29–33.

Shelton's complaint fails because it doesn't satisfy federal pleading standards. Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "demands more than an unadorned, the-

1

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But Shelton's complaint contains no factual allegations of *how* the supervisory defendants showed deliberate indifference or negligence to her plight or risk, at least not beyond the general statements that the defendants failed to "properly train and supervise the conduct of the personnel at WKCC" and failed "to adopt policies and procedures" or "adhere to training, policies, and procedures adopted." Complaint ¶¶ 19, 20. These allegations, however, merely track the elements of Shelton's claims and add no factual plausibility to her account. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). Such "naked assertions devoid of further factual enhancement" do not state a claim for relief." *Iqbal*, 556 U.S. at 678 (cleaned up).

Shelton's only response is that discovery is needed to "evaluate the policies, procedures and duties established to protect visitors and service providers at WKCC and the facts that resulted in the physical assault of the plaintiff." Response at 4. But this gets things backwards: "Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Legal conclusions are all Shelton offers, and without plausible factual allegations she has not stated a claim for relief against the supervisory defendants sufficient to withstand a motion to dismiss.

The complaint is insufficient for other reasons as well.

Regardless of the specificity of her factual allegations, Shelton's deliberate-indifference claim under the Fifth Amendment fails as a matter of law because Shelton is suing state rather than federal actors. "[T]he Fifth Amendment applies to the federal government, not state or local governments." *Myers v. Village of Alger*, 102 F. App'x 931, 933 (6th Cir. 2004). Nor does it find any purchase in the Ninth Amendment. That amendment has been construed "not [to] confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991).

Perhaps recognizing these shortcomings, Shelton's response grounds her deliberate-indifference claim in the Fourteenth Amendment, which *does* apply to state actors. DN 17 at 1. But this approach also leads nowhere. Shelton's theory is that these state officials failed to protect her from physical harm; she doesn't contend they took any affirmative action to harm her person or property. But "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal

levels of safety and security." *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989).[1]

Shelton's deliberate-indifference claim also fails because she cannot overcome these defendants' qualified-immunity defense. Qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Though it operates as an affirmative defense available to defendants, not a required element of a plaintiff's claims, "a plaintiff bears the burden of overcoming qualified immunity" once raised by the defendants. *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). And these four defendants have asserted it here. DN 14 at 8.

That means Shelton must establish not only that the defendants violated her constitutional rights, but also that they violated rights that were clearly established in the law. "If [a] plaintiff fails to show either that a constitutional right was violated or that the right was clearly established, she will have failed to carry her burden." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Shelton does neither: she does not mention qualified immunity in her response and makes no attempt to address the clearly established prong of the qualified-immunity analysis. So she has not overcome her "burden of showing that defendants are not entitled to qualified immunity." *Id.*

Shelton's negligence and loss-of-consortium claims arise under state rather than federal law. But they likewise fail because the supervisory defendants are entitled to state-law immunity. In Kentucky, government officials sued in their individual capacity are entitled to "qualified official immunity." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). "Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions ...

---

[1] Two narrow exceptions may sometimes exist—one involving plaintiffs who were in custody, and another concerning a so-called state-created danger. Even absent affirmative state action, a "governmental actor may violate the due process clause by allowing a third party to harm a person in government custody or by creating a particular danger to the victim." *Hunt v. Sycamore Community School District Board of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008). Shelton has not invoked either exception, perhaps because neither applies here. Shelton alleges that "she was providing services to inmates on the premises of Defendant WKCC," so she was not in custody. Complaint ¶ 14. *Cf. Smith v. Gallia County, Ohio Jail*, 2022 WL 102965, at *4 (6th Cir. 2022) ("The special relationship exception is inapplicable because Smith was a government employee at the time of the incident, not a prisoner or other individual under state control."). And the Sixth Circuit has repeatedly rejected state-created-danger claims brought by prison employees attacked by inmates. *See, e.g.*, *Pickle v. McConnel*, 592 F. App'x 493 (6th Cir. 2015); *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 490–95 (6th Cir. 2002); *Nobles v. Brown*, 985 F.2d 235 (6th Cir. 1992).

(2) in good faith; and (3) within the scope of the employee's authority." *Id.* "Discretionary acts or functions are those involving the exercise of discretion and judgment" and "necessarily require the exercise of reason in the adaptation of a means to an end, and discretion in determining how or whether the act shall be done or the course pursued." *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 477 (Ky. 2006).

Shelton alleges that the supervisory defendants were performing discretionary functions: they failed "to adopt policies and procedures" or "to properly train and supervise the conduct of personnel at WKCC" to ensure they "adhere[d] to training, policies, and procedures." Complaint ¶ 19. But "rule-making is an inherently discretionary function." *Sloas*, 201 S.W.3d at 478; *see also Minger v. Green*, 239 F.3d 793, 802 (6th Cir. 2001) ("The implementation of a security system is a discretionary function"). So too is supervision of subordinate employees: "supervising the conduct of others is a duty often left to a large degree—and necessarily so—to the independent discretion and judgment of the individual supervisor." *Haney v. Monsky*, 311 S.W.3d 235, 244 (Ky. 2010). And Shelton does not dispute the remaining two elements of qualified official immunity under Kentucky law—that the defendants acted in good faith and within the scope of their authority. So that defense offers an independent basis why Shelton's state-law claims fail.

**B. Motion to Intervene**. Sequoia Insurance Company has also moved to intervene as a plaintiff. DN 19. No party opposes its motion. Sequoia asserts that it "is the workers' compensation carrier for the employer of Amanda Shelton"—apparently Shelton Forensic, *see* Complaint ¶ 15—"at the time of the accident in issue … and is subrogated … to the rights of the Plaintiff against Defendants by way of KRS 342.700." *Id.* at 1. That statute authorizes, among other things, an insurer who has paid workers' compensation to "recover in … its own name or that of the injured employee from the other person in whom legal liability for damages exists[.]" § KRS 342.700(1).

Though Sequoia doesn't cite it, Federal Rule of Civil Procedure 24 controls intervention in federal courts. Rule 24(a)(2) authorizes a party to intervene "as of right" if it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Interpreting this language, "[t]he Sixth Circuit requires that proposed intervenors establish the following four factors to intervene as of right: (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest." *Grainger v. Ottawa County*, 90 F.4th 507, 513 (6th Cir. 2024).

Sequoia satisfies these requirements and may intervene as of right.

4

First, its motion is timely.[2] The motion was filed early in the case—before the parties have held a scheduling or discovery conference. As demonstrated below, Sequoia has a legitimate reason for intervening. It promptly asserted that reason, rather than taking a "wait-and-see approach." *Michigan*, 68 F.4th at 1028. And intervention prejudices neither Shelton nor any of the defendants, whose failure to oppose intervention reveals as much. *Cf. Marquez-Warner v. Campus Crest at Louisville, LLC*, 2018 WL 11446385, at *2 (W.D. Ky. 2018) ("In cases where the Sixth Circuit has found motions to intervene to be untimely, the motions were filed after discovery had closed or even after final judgment had been entered.") (collecting cases).

Second, Sequoia has a substantial legal interest in the subject matter of the case. It hopes to recover damages through this case as a subrogee. *See id.* at *2 ("Hartford possesses a substantial legal interest in the funds that are the subject of this litigation, as it seeks to recover damages as subrogee.").

Third, without intervention Sequoia's interest may be impaired. It could lose its subrogation rights: KRS § 411.188(2) states that "a failure to assert subrogation rights by intervention … will result in a loss of those rights," and district courts have held that this satisfies the third factor. *See, e.g.*, *Marquez-Warner*, 2018 WL 11446385, at *2; *Lemaster v. Taylor Industries, LLC*, 2011 WL 1577808, at *1–2 (E.D. Ky. 2011).

Fourth, Shelton cannot be expected to adequately protect Sequoia's interest because their interests are clearly different and arguably adverse: Shelton has no interest in pursuing or preserving subrogation rights for a third party under KRS § 411.188(2) and in fact hopes to maximize her recovery, while Sequoia hopes to reduce it by rerouting to itself whatever compensation she received for what it has paid as an insurer. *Lemaster*, 2011 WL 1577808 at *2.[3]

---

[2] The timeliness factor, in turn, encompasses five sub-factors: "(1) the stage of the proceedings; (2) the purpose of intervention; (3) the length of time that the movant knew or should've known of its interest in the case; (4) the prejudice to the original parties; and (5) any unusual circumstances militating for or against intervention." *United States v. Michigan*, 68 F.4th 1021, 1024–25 (6th Cir. 2023).

[3] Parties who cannot intervene as of right may "permissively" intervene if they meet the requirements of Rule 24(b)(2). As with 24(a)(2), Sequoia said nothing about whether or how this provision applies. It almost certainly does. A party may permissively intervene if it "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. PRO. 24(b)(2). That requirement is met here, as the similarities between Shelton's complaint and Sequoia's proposed complaint demonstrate. *Cf. Lemaster*, 2011 WL 1577808, at *2 (subrogee who satisfies Rule 24(a)(2) also entitled, in the alternative, to intervene under Rule 24(b)(2)); *Marquez-Warner*, 2018 WL 11446385, at *3 (same). So even if Sequoia didn't meet the requirements to intervene as of right under Rule 24(a)(2), it could permissively intervene under Rule 24(b)(2).

****

For these reasons, the Court grants the supervisory defendants' motion to dismiss (DN 14) and Sequoia's motion to intervene (DN 19).

These rulings, along with the court's earlier opinion dismissing the official-capacity claims, mean that the only claims remaining in this suit are the individual-capacity claims against Tammy Elkins, Zakkary Eubanks, Zachary Foster, Ryan Mallory, and Michael Nottom. These defendants did not file a motion to dismiss and have answered the complaint. *See* DN 23. The Court sets a telephonic status conference for February 22, 2024 at 11:00am ET to discuss the state of the remaining claims. Counsel may connect by dialing 888-363-4734 and entering access code 4268238.

Benjamin Beaton, District Judge
United States District Court

February 8, 2024